The Judges pronounced their opinions.
JUDGE TUCKER.
Charles Chinn, by his last'will and testament, (whereof he appointed his sons Charles Chinn, E. Chinn and John Chinn, his executors, all of whom qualified,) directed all his lands in the Counties of Eoudon and Pauquier to be sold by them. The executors, pursuant thereto, set up at public sale a lot thereof, “containing two hundred acres, being the lands which the said Charles Chinn, deceased, purchased of R. Downman, which land had been willed by R. Chinn to Bryan Stott, and by the said Stott sold to William Downman.” Of this lot the complainant William Heale became the purchaser, and on the 29th of September, 1788, passed his bond for 2001. the purchase money; and, on the same day, the executors above named executed their joint and several bond to the said Heale, reciting the premises, with condition to be void, 69 “if the said ^executors should convey to the said Heale, by good and sufficient deeds of conveyance, the aforesaid land, to contain two hundred acres, whenever they should be thereto required.” The bill is brought for a conveyance; suggests a deficiency in the lot called Stott’s land, and requires that the deficiency be made up out of the adjacent lands of the testator. And from an examination of the condition of the bond, as noticed above, the payment of the full sum of 2001. by the purchaser, and the acceptance of ir by the executors, I have no doubt that, according to the spirit and intention of the sale, the plaintiff is entitled to have the full quantity of two hundred acres of land, if there were so much land in Bryan Stott’s lot; and if not, out of any adjacent lands of the testator, which were to be sold pursuant to the directions of his will. There is, however, one or two errors in the decree of the County Court. Pirst, either in proceeding to a final decree against all the executors by whom the land was sold, although one only had put in an answer, without proceeding to take the bill for confessed against the others, in a regular course;(a) or secondly, in decreeing the supposed deficiency to be made' up by the defendant Charles Chinn, who alone had answered, out of his lands, instead of the lands of his. testator, if any there were, adjoining Bryan Stott’s lot. Which of these is the error of the Court, and which the blunder of the Clerk, it is not easy to say. In the case of Freelands v. Royall, (b) one partner answered in the name of both; and the decree was in favour of the defendants, not against them, as it is here. Nor am I perfectly satisfied with the survey made in the cause, on the motion of the plaintiff, before the defendants’ appearance, and even before the plaintiff had filed his bill; more especially as there seems to be no reference, in that survey, to the testator’s title deeds; in one of which, (that of September 16, 1772, from R. Downman to Charles Chinn the testator,) boundaries are expressed to which the survey before mentioned bears no kind of relation, that I can discover; as the answer suggests that Charles Chinn entered into possession and held 70 *the land as long as he lived, according to those bounds, there is at least room to doubt whether the survey made, on the motion of the complainant, before the defendants were in court, and even before filing his bill, is altogether correct. I am therefore of opinion the decree was erroneous ; and that the decree of the Superior Court of Chancery, affirming the same, ought also to be reversed, and the cause remanded to that Court for further proceedings therein to be had; with directions to make up the deficiency of two hundred acres (if Byran Stott’s lot shall be found not to contain that quantity) out of the adjoining lands of the testator, if any there be, to be laid off in the most convenient and equitable manner; but if there be no such lands adjoining which remain unsold by the executors, that a jury ought to be empanelled' to assess the complainant’s damages by reason of the deficiency; if it shall appear that the executors have, by their own act, put it out of their power to make up that deficiency, by disposing of the adjoining lands of their testator: if, however, there were no such adjoining lands of their testator, in that case the executors ought to refund to the complainant a ratable proportion of the purchase money paid by him, with interest on the same from the 29th of September, 1788, the date of his bond given on that account to Kevin Powel, a creditor of the deceased Charles Chinn, at the request of his executors and in behalf of his estate.
JUDGE ROANE.
The depositions in this cause, and particularly that of William Metcalf, prove satisfactorily, that whatever uncertainty or difference of opinion might have existed touching a line of division between the two tracts of land in question, at a prior time, the same was adjusted between the parties just before the sale by the executors; at which time the line was set- *37 •tied to run as from the green letters E. F. ■on Routt’s survey. The residue of the tract was that sold by the executors and purchased by the complainant. It was sold by the acre; so that if it fell short of 71 *200 acres, the purchaser was not to give his bond for so much, or, having given it, would be entitled to an abatement in case of deficiency. Thus the matter stood as at the time of the sale, and independently of the title-bond spread upon the record, and the circumstances, detailed by Col. Powell, at the time of entering into the bonds. It is not admitted that those circumstances (taken even independently of the appellant’s answer, and exclusively of the title-bond) would vary the result as arising from that bond only. That document, however, is to be taken as containing the final agreement of the parties, (whose previous conversations were consequently merged therein,) and as shutting out that uncertainty and danger of perjury which it was the object of the act to avoid and prevent. That bond does not bind the executors to convey 200 acres of land, but merely the lot of land, (which it is also proved was alone offered for sale,) derived from B. Stott, “containing 200 acres.” Again, the bond stipulates for a conveyance oE the “aforesaid land” (i. e. Stott’s) “to contain 200 acres.” What is this, then, but a representation in the first case that this lot contains 200 acres, and in the second instance (more particularly) a covenant warranting it to contain 200 acres? This covenant makes the executors liable to make the purchaser amends in damages; but there is no specific and written agreement binding them to convey any specific land, ulterior to that contained in Stott’s tract, much less the identical land decreed to be conveyed in the case before us.
With respect to the objection that the decree in this case does not extend to the executors other than Charles Chinn; it is expressly stated that the defendants (the two omitted ones included) appeared by their counsel and filed their answer; which answer, however, as set forth, is the answer of Charles Chinn, one of the executors. .Nothing is more common or reasonable, than that the answer of one defendant should be adopted by another: if it was done .in this instance, so as to bar the plaintiff of the benefit resulting from the oath of the other defendants, as he might have 72 objected ::'to the proceeding, and require an answer sanctioned by this solemnity, so he might waive that right and accept the answer in question. This he has done by replying generally, setting the cause for hearing, taking depositions, and failing to proceed against the other defendants for not answering in a mote particular and special manner. The plaintiii has proceeded on the maxim “quisquís pot-est renunciare juri pro se introducto.” The case of executors, in the present instance, is stronger than that of separate individuals; for one executor is competent to bind his testator, and nothing is more common than for one of several executors to do the whole business. In the case, however, of Freelands v. Royall,(a) it was held that the answer of one joint partner in the name of both should be sufficient; on the ground of the complainant’s having filed a general replication and taken no steps to compel an answer from the other. That case is, perhaps, less strong than the one before us; not only in the diversity before mentioned between executors and other individuals, but because, in that case, we had only the ipse dixit of one partner, who styled himself the sole representative of the firm, whereas, in this case, the residue of the firm themselves (the other executors) have appeared by their attorney, and put in an answer by adoption. In the case of Freelands, there was not only no oath, but no answer for the other partner; whereas, in this case, there is an answer, but the solemnity of an oath has been dispensed with by the plaintiff: one circumstance, however, is common to both cases, which was the governing one in the case of B'reelands; and that is, the acquiescence of the plaintiff. It is true, in Freelands’ case, the junior Judge of this Court objected to the decree for want of the answer of the other partner; but both the other Judges were of a contrary opinion, and such was the judgment of the Court; and it is remarkable that no objection was taken to the answer, in that case, on this ground, by the able counsel concerned in it. It is, however, not only the spirit of this decision which governs me in the present case, but the fear of overturning very many decrees, 73 *and opening wide the door of litigation. I believe that, unless this objection is overruled in the present instance, the consequences cannot be foreseen nor estimated; whereas, if any injury has accrued to the iJlaintiff, it has been produced by his own acts and acquiescence.
My opinion is, that both decrees be reversed, and compensation made to the appellee, in proportion to the quantity of land deficient, at the rate of 20s. per acre. It would be wrong to turn over the appellee to a Court of law to recover damages, because he was competent to come into equity to pray a discovery; and, being there, that Court should make a final end of the case, as a certain criterion presents itself whereby that compensation can be estimated.
JUDGE FLEMING.
On a critical inspection of this record, the merits of the cause seem to be comprised within a narrow compass. I put out of view the depositions of Welsh and Powell, which go to prove a promise of Chinn to make up in land any deficiency there might be in the land sold to Heale, (as being clearly within the statute of frauds and perjuries,) and confine myself to the written covenant, as stated in the condition of the bond for conveying the land to the purchaser; which was sold for 200 acres, at twenty shillings per acre. Heale, at the time of the purchase, had no other land than that called Stott’s tract in contemplation, nor any idea that he had purchased any other land; but was doubtful whether it contained the quantity of 200 acres; and refused to give his bond until it should be ascertained by actual survey. At length on Heale’s executing a bond for *38 2001., the purchase money, the executors of Charles Chinn the elder, under whose will the land was sold, executed a bond to Heale in the penalty of 5001. with a condition “that they would convey to the said Wm. Heale, by good and sufficient deeds' of conveyance, the aforesaid land,” (to wit, Stott’s tract, and covenanted “that it contained 200 acres;” but on a survey, there appeared to be a deficiency, in quan74 tity, of 36 3-4 acres; for*which Heale ought to have compensation, at the rate of twenty shillings per acre, with interest from the time his bond for the purchase money became payable. I am therefore of opinion, that the decree is erroneous in having ordered that compensation to be made out of the land of the defendant Charles Chinn, instead of a compensation in money pro rata, for the deficiency in the quantity of land as aforesaid. :
Being doubtful whether the answer of Charles Chinn ought to be considered as the answer of the other defendants, I think it safest, and the most regular proceeding, to direct that it shall appear that the decree nisi has been served on the other defendants, before a final decree. 1
The following was entered as the decree of the Court. 1
“This Court is of opinion that the said decree is erroneous in having affirmed the decree of the County Court of Rauquier, rendered the 28th day of August, 1798, in which said decree of the County Court there is error in this, in affirming an interlocutory decree of the said Court passed the 27th day of March, 1798, in which it is decreed and ordered that the complainant recover against the defendant (Charles Chinn) 36 3-4 acres of land, to be laid off out of his lands adjoining the complainant, and appointing commissioners to lay off the said quantify of land accordingly, and report their proceedings to the Court for a final decree: and in having further ordered that the said defendant convey to the complainant the land described in a survey made by Charles Kemper in this cause, bearing date the 8th day of June, and referred to in the report of the said commissioners of the same date. And a majority of this Court are further of opinion, that the said County Court erred in proceeding to a final decree in this cause before the decree nisi had been duly served on the defendants Rawleigh Chinn and John Chinn, and a return of the service thereof made to the said Court. 75 Therefore, it is '"decreed and ordered, that the decree aforesaid of the said Superior Court of Chancery be reversed and annulled, and that the appellee pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And this Court proceeding to make such decree as the said Superior Court of Chancery ought to have pronounced, it is further decreed and ordered, that the decrees aforesaid of the said Qounty Court of the 27th day of March, and the 28th day of August, 1798, be also reversed and annulled, and that the appellee pay to the appellants their costs by them expended in the prosecution of their appeal in the said Superior Court of Chancery. And it is ordered, that the cause be remanded to the said Superior Court of Chancery to be remitted to the County Court aforesaid for further proceedings to be had against the executors of Charles Chinn, deceased, who have not answered the complainant’s bill; and that, at a final hearing of the cause, (unless the executors shew good cause to the contrary,) a compensation in money be made to the said complainant, at the rate of twenty shillings per acre, tor the deficiency of 36 3-4 acres of land, with interest thereon from the 29th day of September, 1788, until payment. ”

 1 Hen. & Munf. 206.

 2 Hen. & Munf. 575.

 2 Hen. & Munf. 575.